UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA<br>and the STATE OF WISCONSIN<br><br>        Plaintiffs,<br><br>   v.<br><br>P. H. GLATFELTER COMPANY<br>and<br>WTM I COMPANY<br>(f/k/a Wisconsin Tissue Mills Inc.),<br><br>        Defendants. | CIVIL ACTION NO. |

**CONSENT DECREE**
**FOR REMEDIAL DESIGN AND REMEDIAL ACTION AT OPERABLE UNIT 1 OF**
**THE LOWER FOX RIVER AND GREEN BAY SITE**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 4 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 5 |
| V. | GENERAL PROVISIONS | 13 |
| VI. | ESTABLISHMENT AND USE OF CERTAIN SITE-SPECIFIC ACCOUNTS | 15 |
| VII. | PERFORMANCE OF THE RESPONSE WORK BY SETTLING DEFENDANTS | 19 |
| VIII. | POST-REMEDY RESPONSE WORK AND REMEDY REVIEW | 26 |
| IX. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 28 |
| X. | ACCESS AND INSTITUTIONAL CONTROLS | 30 |
| XI. | REPORTING REQUIREMENTS | 36 |
| XII. | RESPONSE AGENCIES' APPROVAL OF PLANS AND OTHER SUBMISSIONS | 40 |
| XIII. | PROJECT COORDINATORS | 43 |
| XIV. | CERTIFICATION OF COMPLETION | 44 |
| XV. | EMERGENCY RESPONSE | 47 |
| XVI. | NATURAL RESOURCE RESTORATION EFFORTS | 48 |
| XVII. | PAYMENTS TO PLAINTIFFS | 51 |
| XVIII. | INDEMNIFICATION AND INSURANCE | 58 |
| XIX. | FORCE MAJEURE EVENTS | 61 |
| XX. | DISPUTE RESOLUTION | 63 |
| XXI. | STIPULATED PENALTIES | 68 |
| XXII. | COVENANTS NOT TO SUE BY PLAINTIFFS | 75 |
| XXIII. | COVENANTS BY SETTLING DEFENDANTS | 81 |
| XXIV. | CONSENT DECREE FUNDING LIMITATION AND SPECIAL RESERVATION OF RIGHTS | 84 |
| XXV. | EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION | 89 |
| XXVI. | ACCESS TO INFORMATION | 92 |
| XXVII. | RETENTION OF RECORDS | 94 |
| XXVIII. | NOTICES AND SUBMISSIONS | 95 |
| XXIX. | EFFECTIVE DATE | 98 |
| XXX. | RETENTION OF JURISDICTION | 98 |
| XXXI. | APPENDICES | 99 |
| XXXII. | COMMUNITY RELATIONS | 99 |
| XXXIII. | MODIFICATIONS | 100 |
| XXXIV. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 100 |
| XXXV. | SIGNATORIES/SERVICE | 101 |
| XXXVI. | FINAL JUDGMENT | 102 |

-i-

# TABLE OF APPENDICES

Appendix A          Trustee Council Resolution relating to this Consent Decree

Appendix B          Appendix addressing Management of the Disbursement Special Account

Appendix C          Appendix addressing Escrow Account Management

Appendix D          Form of Escrow Agreement

Appendix E          Appendix addressing Special Procedures for Restoration Work

Appendix F          Administrative Order on Consent between WTM I Company, EPA, and
                    WDNR, captioned In the matter of the Lower Fox River and the Green
                    Bay Site, Docket No. V-W-'03-C-745 (including the Statement of Work
                    for Remedial Design)

Appendix G          Map of Operable Unit 1

Appendix H          Record of Decision for Operable Units 1 and 2

Appendix I          Statement of Work for the Remedial Action

-ii-

## CONSENT DECREE
## FOR REMEDIAL DESIGN AND REMEDIAL ACTION AT OPERABLE UNIT 1 OF
## THE LOWER FOX RIVER AND GREEN BAY SITE

### I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Wisconsin (the "State"), on behalf of the Wisconsin Department of Natural Resources ("WDNR"), filed a Complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.      The Plaintiffs' Complaint seeks, inter alia: (i) reimbursement of certain costs incurred by the United States and the State for response actions at the Lower Fox River and Green Bay Site (the "Site," as defined below) in Northeastern Wisconsin, together with accrued interest; and (ii) performance of response work by the defendants at Operable Unit 1 ("OU1," as defined below) of the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) (the "NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), the State was notified of negotiations with potentially responsible parties regarding the implementation of the remedial design and the remedial action for OU1. The State has been an active participant in such negotiations and is a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA has notified the appropriate natural resource trustees (the "Trustees"), as represented by the Fox River/Green Bay Natural Resource Trustee Council, of negotiations with potentially responsible parties regarding the releases of hazardous substances that may have resulted in injuries to

1

natural resources under Federal, State, and Tribal trusteeship at the Site. The Trustees have participated in the negotiation of this Consent Decree, and support this Consent Decree, as indicated by the Trustee Council Resolution attached to this Consent Decree as Appendix A.

E.      EPA, WDNR, and the Trustees are parties to several Site-specific Memoranda of Agreement, as "Inter-Governmental Partners" sharing a "mutual goal of remediating and/or responding to hazardous substances releases and threats of releases to, and restoring injured and potentially injured natural resources in, [the Site area]." The Inter-Governmental Partners' founding Memorandum of Agreement recognized that WDNR would have "a leadership role, in full partnership with EPA, in exercising response authority" at the Site, and the Plaintiffs intend to continue that cooperative relationship as to actions required under this Consent Decree.

F.      The defendants that have entered into this Consent Decree ("Settling Defendants," as defined below) do not admit any liability to the Plaintiffs, to the Trustees, or to any other party arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

G.      In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, WDNR in 1998 commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430, with funding and technical assistance from EPA. In December 2002, WDNR completed a Remedial Investigation ("RI") Report and a Final Feasibility Study ("FS") for the Site.

H.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, notice of the completion of the FS and of the proposed plan for remedial action was published in major local newspapers of general circulation in the Fox River Valley. WDNR and EPA provided an opportunity for

2

written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which WDNR and EPA based the selection of the response action.

I.    The decision by WDNR and EPA on the remedial action to be implemented at OU1 at the Site is embodied in a final Record of Decision ("ROD"), executed by WDNR and EPA in December 2002. The ROD includes an explanation of significant differences between the final remedial action plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

J.    Based on the information presently available to EPA and WDNR, EPA and WDNR believe that the Response Work (as defined below) will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

K.    Solely for the purposes of Section 113(j) of CERCLA, the remedial action selected by the ROD and the Response Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

L.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of OU1 and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

3

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has

personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent

Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that

they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall

not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce

this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the

State and upon Settling Defendants and their successors and assigns. Any change in ownership

or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or

real or personal property, shall in no way alter such Settling Defendant's responsibilities under

this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor

hired to perform the Response Work required by this Consent Decree and to each person

representing any Settling Defendant with respect to OU1 or the Response Work and shall

condition all contracts entered into hereunder upon performance of the Response Work in

conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall

provide written notice of the Consent Decree to all subcontractors hired to perform any portion of

the Response Work required by this Consent Decree. Settling Defendants shall nonetheless be

responsible for ensuring that their contractors and subcontractors perform the Response Work

contemplated herein in accordance with this Consent Decree. With regard to the activities

4

undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXXI). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Date of Lodging" shall mean the day on which this Consent Decree is lodged with the Court.

"DOI" shall mean the United States Department of the Interior and any successor departments or agencies of the United States.

5

"DOI Past Cost Payments" shall mean the payments to be made to the DOI NRDAR Fund under Subparagraph 52.a.(ii) (Initial Payments to the United States) of this Consent Decree to reimburse DOI for a portion of its past natural resource damage assessment costs related to the Site.

"DOJ" shall mean the United States Department of Justice and any successor departments or agencies of the United States.

"Effective Date" shall be the effective date of this Consent Decree as provided by Section XXIX.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"EPA Past Cost Payments" shall mean the payments to be made to the Fox River Site Special Account within the EPA Hazardous Substance Superfund under Subparagraph 52.a.(i) (Initial Payments to the United States) of this Consent Decree to reimburse EPA for a portion of its past response costs related to the Site.

"Force Majeure Event," for purposes of this Consent Decree, shall mean any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors or subcontractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure Event and best efforts to address the effects of any potential Force Majeure Event (i) as it is occurring and (ii) following the potential Force Majeure Event, such that the delay is minimized to the greatest extent possible.

6

"Fox River OU1 Disbursement Special Account" or the "Disbursement Special Account" shall mean the disbursement special account established for OU1 by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3), and this Consent Decree.

"Fox River Site Special Account" shall mean the special account established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3) .

"Fox River OU1 Escrow Account" or the "Escrow Account" shall mean the escrow account trust fund established for OU1 by the Settling Defendants pursuant to this Consent Decree.

"Institutional Controls" shall mean all response activities to implement institutional controls requirements under the ROD.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Interest Earned" shall mean interest earned on amounts in the Disbursement Special Account, which shall be computed monthly at a rate based on the annual return on investments of the Hazardous Substance Superfund. The applicable rate of interest shall be the rate in effect at the time the interest accrues.

"July 2003 AOC" shall mean the Administrative Order on Consent between WTM I Company, EPA, and WDNR, captioned In the matter of the Lower Fox River and the Green Bay Site, Docket No. V-W-'03-C-745 (the "July 2003 AOC"). The July 2003 AOC is attached hereto as Appendix F.

7

"Long Term Monitoring" shall mean all response activities to implement long term monitoring requirements under the ROD.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NRD Commitment" shall mean the $3,000,000 committed to natural resource restoration efforts under Paragraph 52 (Initial Payments to Plaintiffs) and Paragraph 53 (Subsequent Payments for Natural Resource Restoration).

"NRDAR Fund" shall mean DOI's Natural Resource Damage Assessment and Restoration Fund.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by the Response Agencies pursuant to this Consent Decree and the Statements of Work.

"Operable Unit 1" or "OU1" shall mean the Little Lake Butte des Morts reach of the Lower Fox River, as delineated by the Record of Decision signed by WDNR and EPA in December 2002. More specifically, OU1 is the portion of the Lower Fox River (and the underlying River sediment) starting at the outlet of Lake Winnebago at the Neenah Dam and the Menasha Dam downstream to the Upper Appleton Dam, including sediment deposits A through H and POG. As so defined, OU1 is depicted in Figure 7-9 of the December 2002 Final Feasibility Study for the Site, a copy of which is attached hereto as Appendix G.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

8

"Parties" shall mean the United States, the State of Wisconsin, and the Settling Defendants.

"Performance Standards" shall mean the selected remedy requirements, contingent remedy requirements, and cleanup standards for measuring the achievement of the goals of the Remedial Action, as set forth in Sections 13.1, 13.3.1, and 13.4 through 13.6 of the ROD and Section II of the SOW for Remedial Action.

"Plaintiffs" shall mean the United States and the State of Wisconsin.

"Post-Remedy Institutional Controls Work" shall mean all response activities to implement institutional controls requirements under the ROD and the Institutional Controls Plan after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b.

"Post-Remedy Monitoring" shall mean all response activities to implement Long Term Monitoring requirements under the ROD and the Final Operation and Maintenance Plan after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the Record of Decision relating to OU1 at the Site signed in December 2002 by the Deputy Administrator of the Water Division of WDNR and by the Director of the Superfund Division of EPA Region 5, and all attachments thereto. A copy of the ROD (excluding the ROD Appendices) is attached as Appendix H.

"Remedial Action" shall mean those activities (except for Operation and Maintenance, Post-Remedy Institutional Controls Work, and Post-Remedy Monitoring), to be undertaken by the Settling Defendants to implement the ROD requirements for OU1, in accordance with the SOW, the final Remedial Design Work Plan, the final Remedial Action Work Plan, and other

9

plans approved by the Response Agencies. For the purpose of this Consent Decree, Remedial Action shall not include any response action required solely under Section XV (Emergency Response).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 14 of this Consent Decree and approved by the Response Agencies, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendant WTM I Company to conduct predesign investigations and to develop the final plans and specifications for the Remedial Action for OU1 pursuant to the July 2003 AOC and the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document described by Paragraph 12 of this Consent Decree and approved by the Response Agencies, and any amendments thereto.

"Response Agencies" shall mean WDNR and EPA.

"Response Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XVI (Natural Resource Restoration Efforts) and Section XXVII (Retention of Records).

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean P. H. Glatfelter Company and WTM I Company.

"Settling Defendants' Related Parties" shall mean: (i) Settling Defendants' successors, but only to the extent that the alleged liability of such person is based on the alleged liability of a Settling Defendant; (ii) Settling Defendants' former or current officers, directors, employees, or shareholders, but only to the extent that the alleged liability of such person is based on acts

10

and/or omissions which occurred in the scope of the person's employment or capacity as an officer, director, employee, or shareholder of a Settling Defendant.

"Site" shall mean the Lower Fox River and Green Bay Site in Northeastern Wisconsin.

"Specified Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States and the State incur after July 1, 2003 in reviewing or developing plans, reports and other items pursuant to the July 2003 AOC and this Consent Decree, in verifying the Response Work, in implementing O&M, Institutional Controls, and Long Term Monitoring requirements required under the ROD and the SOW, or in otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 19 of Section VIII, Section X (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement Institutional Controls including, but not limited to, the amount of just compensation), Section XV, and Paragraph 90 of Section XXII.

"State" shall mean the State of Wisconsin.

"State Past Cost Payments" shall mean the $10,000 payment to be made to the State under Subparagraph 52.b (Initial Payments to the State) of this Consent Decree to reimburse the State for a portion of its past response costs related to the Site.

"Statements of Work" or "SOW" shall mean: (i) the statement of work for implementation of the Remedial Design, as set forth at Appendix F to this Consent Decree, and any modifications made in accordance with the July 2003 AOC and this Consent Decree; and/or (ii) the statement of work for implementation of the Remedial Action, Institutional Controls,

Long Term Monitoring, and Operation and Maintenance at the Site, as set forth in Appendix I to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Response Work under this Consent Decree.

"United States" shall mean the United States of America.

"Unresolved DOI Past Costs" shall mean the unreimbursed natural resource damage assessment costs that the United States has paid at or in connection with the Site (or any portion of the Site) through July 1, 2003.

"Unresolved EPA Past Costs" shall mean the unreimbursed response costs, including, but not limited to, direct and indirect costs, that the United States has paid at or in connection with the Site (or any portion of the Site) through July 1, 2003.

"Unresolved State Past Costs" shall mean the unreimbursed response costs, including, but not limited to, direct and indirect costs, that the State has paid at or in connection with the Site (or any portion of the Site) through July 1, 2003.

"Waste Material" shall mean: (i) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (ii) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (iii) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (iv) any "hazardous substance" under Wis. Stat. § 292.01.

"WDOJ" shall mean the Wisconsin Department of Justice and any successor departments or agencies of the State.

"WDNR" shall mean the Wisconsin Department of Natural Resources and any successor departments or agencies of the State.

## V.  GENERAL PROVISIONS

5. <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment by the design and implementation of certain response actions at OU1 by the Settling Defendants, to reimburse a portion of the EPA and State past costs and to reimburse all Specified Future Response Costs, to provide partial compensation for natural resource damages, and to resolve the claims of Plaintiffs against Settling Defendants as provided in this Consent Decree.

6. <u>Commitments by Settling Defendants</u>.

     a.    Settling Defendants shall finance and perform the Response Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by the Response Agencies pursuant to this Consent Decree.  Settling Defendants shall also reimburse EPA and the State for a portion of their past response costs and shall reimburse EPA and the State for future response costs, as provided by this Consent Decree.  Settling Defendants shall also provide partial compensation for natural resource damages, as provided herein.

     b.    Settling Defendants need not perform Response Work under this Consent Decree unless:  (i) the Disbursement Special Account and/or the Escrow Account described by Section VI and Appendices B and C contain funds to finance the work; or (ii) this Consent Decree specifically requires the Settling Defendants to fund or to perform the work without reimbursement from, or recourse to, the Disbursement Special Account and/or the Escrow Account.

13

7. Compliance With Applicable Law. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW, unless the Response Agencies determine that there are grounds for invoking a waiver under 40 C.F.R. § 300.430(f)(1)(ii)(C). The activities conducted pursuant to this Consent Decree, if approved by the Response Agencies, shall be considered to be necessary and consistent with the NCP.

8. Permits.

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Response Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Response Work). Where any portion of the Response Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Settling Defendants may seek relief under the provisions of Section XIX (Force Majeure Events) of this Consent Decree for any delay in the performance of the Response Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Response Work.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI. ESTABLISHMENT AND USE OF CERTAIN SITE-SPECIFIC ACCOUNTS

9.      <u>Generally</u>.  As provided by this Section and Appendices B and C, two separate Site-specific accounts – to be known as the Fox River OU1 Disbursement Special Account (the "Disbursement Special Account") and the Fox River OU1 Escrow Account (the "Escrow Account") – shall be established and managed to provide sources of funds for payment and reimbursement of particular categories of Site-related response costs and natural resource restoration costs, as specified by Paragraphs 10 and 11.  The Escrow Account may be established as several accounts or sub-accounts to address the different sources and uses of the funds paid into the Escrow Account.  The response costs to be paid and reimbursed from the Disbursement Special Account and the Escrow Account are expected to include, but will not be limited to, certain costs incurred by the Settling Defendants that are defined herein as "Allowable RD/RA Costs."  The natural resource restoration costs to be paid and reimbursed from the Escrow Account may include, but will not be limited to, certain costs incurred by the Settling Defendants that are defined herein as "Allowable Restoration Work Costs."

a.      <u>Allowable RD/RA Costs</u>.  Solely for the purpose of this Consent Decree, the term "Allowable RD/RA Costs" is defined as necessary response costs incurred and paid by Settling Defendants for the Remedial Design and the Remedial Action, excluding the following costs that shall not be eligible for payment or reimbursement as Allowable RD/RA Costs:

(1)      any costs exceeding $2 million for the contaminant delineation investigation and Remedial Design components of the Response Work, as provided by Subparagraph 8.a of Appendix C;

(2)      response costs incurred or paid by the Settling Defendants pursuant to Section XV (Emergency Response);

15

(3)     any other payments made by Settling Defendants to the Plaintiffs pursuant to this Consent Decree, including, but not limited to: (i) any direct payments to Plaintiffs under Section XVII; and (ii) any interest, stipulated penalties, or stipulated damages paid pursuant to Section XXI;

(4)     attorneys' fees and costs;

(5)     costs of any response activities Settling Defendants perform that are not required under, or approved by the Response Agencies pursuant to this Consent Decree;

(6)     costs related to Settling Defendants' litigation, settlement, development of potential contribution claims or identification of defendants;

(7)     internal costs of Settling Defendants, including but not limited to, salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Defendants directly performing the Remedial Design or the Remedial Action;

(8)     any costs incurred by Settling Defendants prior to the Effective Date, except for: (i) Remedial Design work approved by the Response Agencies; or (ii) other costs of Response Work required by this Consent Decree after the Date of Lodging; or

(9)     any costs incurred by Settling Defendants pursuant to Section XX (Dispute Resolution).

b.     <u>Allowable Restoration Work Costs</u>.  Solely for the purpose of this Consent Decree, the term "Allowable Restoration Costs" is defined as necessary restoration costs incurred and paid by Settling Defendants for Approved Restoration Work (as defined by Paragraph 48),

excluding the following costs that shall not be eligible for payment or reimbursement as Allowable Restoration Work Costs:

(1)     any costs for work other than Approved Restoration Work;

(2)     any costs exceeding the pre-approved cost ceiling set by the Statement of Work for Approved Restoration Work;

(3)     any other payments made by Settling Defendants to the Plaintiffs pursuant to this Consent Decree, including, but not limited to:  (i) any direct payments to Plaintiffs under Section XVII; and (ii) any interest, stipulated penalties, or stipulated damages paid pursuant to Section XXI;

(4)     attorneys' fees and costs;

(5)     costs of any restoration activities Settling Defendants perform that are not required under, or approved by the Plaintiffs pursuant to, this Consent Decree;

(6)     costs related to Settling Defendants' litigation, settlement, development of potential contribution claims or identification of defendants;

(7)     internal costs of Settling Defendants, including but not limited to, salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Defendants directly performing Approved Restoration Work;

(8)     any costs incurred by Settling Defendants prior to the Effective Date, except for Approved Restoration Work completed pursuant to this Consent Decree; or

17

(9)      any costs incurred by Settling Defendants pursuant to Section XX (Dispute Resolution).

10.      <u>Establishment and Management of the Disbursement Special Account</u>.  In accordance with the procedures and requirements established by the December 2001 Consent Decree in the matter captioned <u>United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corporation</u>, Case No. 01-C-0816 (E.D. Wis.) (the "API/NCR Decree"), the Plaintiffs shall use their best efforts to have $10 million available for funding response action projects under the API/NCR Decree deposited in the Disbursement Special Account after the Effective Date.  EPA shall establish the Disbursement Special Account as a new special account within the EPA Hazardous Substance Superfund.  Subject to the terms and conditions set forth in this Consent Decree, EPA agrees to make those funds in the Disbursement Special Account, including Interest Earned on those funds in the Special Account, available for disbursement to the Escrow Account as partial reimbursement of certain Allowable RD/RA Costs.  The Disbursement Special Account shall be managed as set forth in Appendix B to this Consent Decree, which is incorporated herein by reference

11.      <u>Establishment and Management of the Escrow Account</u>.  By no later than March 31, 2004, the Settling Defendants shall establish and maintain financial security in the form of the Escrow Account trust fund, from which funds shall be disbursed for payment and reimbursement of particular categories of Site-related response costs and natural resource restoration costs.  The Settling Defendants shall establish the Escrow Account with the funds required to be paid pursuant to Section XVII (Payments) below.  The Escrow Account shall be managed as set forth in Appendix C to this Consent Decree, which is incorporated herein by reference.  The escrow agreement establishing the Escrow Account shall be in substantially the

18

form attached hereto as Appendix D and shall identify the manager for the Escrow Account (the "Escrow Agent"). The Settling Defendants may establish the Escrow Account (or an account or sub-account within the Escrow Account) as a Qualified Settlement Fund (or "QSF") within the meaning of 468B-1 of the Treasury Regulations.

VII. PERFORMANCE OF THE RESPONSE WORK BY SETTLING DEFENDANTS

12.    OU1 Remedial Design.

a.    Settling Defendant WTM I Company shall perform the Remedial Design components of the Response Work (including predesign investigations) in accordance with the July 2003 AOC. A copy of the July 2003 AOC is attached as Appendix F to this Consent Decree, is incorporated herein by this reference, and all requirements under the July 2003 AOC are hereby made enforceable requirements of this Consent Decree, but only as to Settling Defendant WTM I Company.

b.    Settling Defendant WTM I Company shall submit the following plans and reports to the Response Agencies pursuant to the July 2003 AOC and this Paragraph: (i) a Pre-Design Sampling Work Plan; (ii) a Remedial Design Work Plan; (iii) a Basis of Design Report; (iv) a Preliminary (50%) Design; (v) a Pre-Final (90%) Design; and (vi) a Final (100%) Design. Upon approval by the Response Agencies, all submittals required by the July 2003 AOC and this Paragraph 12 shall be incorporated into and become enforceable under this Consent Decree.

c.    Settling Defendant WTM I Company shall provide Settling Defendant P. H. Glatfelter Company with copies of the plans and reports identified in the preceding Subparagraph contemporaneously with their submission to the Response Agencies. Within 15 days of the date of submission, Settling Defendant P. H. Glatfelter may submit written comments

19

on the relevant plan or submission; provided, however, that nothing in this Paragraph shall be construed as affording Settling Defendant P. H. Glatfelter Company a right to invoke or participate in any dispute resolution process under Section XX (Dispute Resolution) concerning any submittal under the July 2003 AOC.

13.     Selection of Supervising Contractor.

        a.      All Remedial Design components of the Response Work to be performed by Settling Defendant WTM I Company pursuant to Paragraph 12 of this Consent Decree shall be under the direction and supervision of WTM I Company's Project Coordinator designated pursuant to the July 2003 AOC. All other aspects of the Response Work to be performed by Settling Defendants pursuant to Sections VII (Performance of the Response Work by Settling Defendants), VIII (Post-Remedy Response Work and Remedy Review), IX (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Settling Defendants' Supervising Contractor, the selection of which shall be subject to disapproval by the Response Agencies. Within 10 days after Settling Defendant WTM I Company's submittal of the Pre-Final (90%) Design, Settling Defendants shall notify the Response Agencies in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. The Response Agencies will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to the Response Agencies and must obtain an authorization to proceed from the Response Agencies before the new Supervising Contractor performs, directs, or supervises any Response Work under this Consent Decree.

b.     If the Response Agencies disapprove a proposed Supervising Contractor, the Response Agencies will notify Settling Defendants in writing.  Settling Defendants shall submit to the Response Agencies a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of the Response Agencies' disapproval of the contractor previously proposed.  The Response Agencies will provide written notice of the names of any contractors that they disapprove and an authorization to proceed with respect to any of the other contractors.  Settling Defendants may select any contractor from that list that is not disapproved and shall notify the Response Agencies of the name of the contractor selected within 21 days of the Response Agencies' authorization to proceed.

c.     If the Response Agencies fail to provide written notice of their authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the Response Agencies pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XIX (Force Majeure Events).

14.     <u>OU1 Remedial Action</u>.  Subject only to the funding limitations of this Consent Decree and the special reservations of rights specified in Section XXIV, the Settling Defendants shall perform all requirements under this Paragraph 14 until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

a.     The requirements under this Paragraph 14 shall be performed by Settling Defendants with funding from the following sources:

(1)     To the extent such funds are available in the Disbursement Special Account, the Settling Defendants shall be entitled to seek disbursement from the Disbursement Special Account for reimbursement of Allowable RD/RA Costs.

21

(2)     To the extent such funds are available in the Escrow Account and not earmarked or disbursed for other purposes under this Consent Decree, the Settling Defendants shall be entitled to seek disbursements from the Escrow Account for payment or reimbursement of Allowable RD/RA Costs.

b.     Within 90 days after the approval of the Final Design submittal described by the Statement of Work appended to the July 2003 AOC, but no earlier than 90 days after the Effective Date, the Settling Defendants shall submit to the Response Agencies a work plan for the performance of the Remedial Action (the "Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD such that the Performance Standards will be achieved, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed by Settling Defendant WTM I Company under Paragraph 12 and approved by the Response Agencies. Upon its approval by the Response Agencies, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.

c.     The Remedial Action Work Plan shall include the following: (i) an updated schedule for implementing all Remedial Action tasks identified in the final design submittal, incorporating any refinements to the Final Project Schedule submitted under the July 2003 AOC and Paragraph 12; (ii) any refinements to the Final Health and Safety Plan, the Final Contingency Plan, the Final Sediment Removal Verification Plan, and the Capital and Operation and Maintenance Cost Estimate submitted under the July 2003 AOC and Paragraph 12; (iii) a Final Construction Quality Assurance Project Plan; (iv) an Institutional Controls Plan; (v) a Final Operation and Maintenance Plan (including a plan for Long Term Monitoring); (vi) a schedule for submitting any other Remedial Action Plans; and (vii) the initial formulation of the Settling

22

Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

d.     Upon approval of the Remedial Action Work Plan by the Response Agencies, Settling Defendants shall perform the activities required under the Remedial Action Work Plan. The Settling Defendants shall submit to the Response Agencies all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XII (Response Agencies' Approval of Plans and Other Submissions). Unless otherwise directed by the Response Agencies, Settling Defendants shall not commence physical Remedial Action activities at OU1 prior to approval of the Remedial Action Work Plan. Subject only to the funding limitations of this Consent Decree and the special reservations of rights specified in Section XXIV, the Settling Defendants shall implement the Remedial Action as set forth in the approved Remedial Action Work Plan until the Performance Standards are achieved.

e.     Notwithstanding the funding limitations of this Consent Decree, after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, the Settling Defendants shall continue to implement the Institutional Controls Plan and the Final Operation and Maintenance Plan for so long as required by those plans.

15.     Modification of the SOW or Related Work Plans.

a.     Subject to Subparagraph 15.c below, if the Response Agencies determine that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, the Response Agencies may require that such modification be incorporated in the SOW and/or such work plans; provided,

23

_however_, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.     For the purposes of this Paragraph 15 and Paragraph 44 only, the "scope of the remedy selected in the ROD" is, as described by Sections 13.1 and 13.3 of the ROD: (i) removal of sediment in OU1 with PCB concentrations greater than the 1 ppm remedial action level ("RAL") or achieving a surface weighed average concentration ("SWAC") of 0.25 ppm or less after removal of sediment; (ii) dewatering of the sediment that is removed; (iii) treatment of the water collected during the dewatering process; (iv) off-Site disposal of the removed sediment after dewatering; (v) demobilization and site restoration; and (vi) Institutional Controls and Long Term Monitoring. The "scope of the remedy selected in the ROD" may also include partial capping or supplemental capping of contaminated sediments in certain areas of OU1, if specified requirements are met, as described by Sections 13.4 through 13.7 of the ROD.

c.     If Settling Defendants object to any modification determined by the Response Agencies to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XX (Dispute Resolution), Paragraph 65 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.     Subject only to the funding limitations of this Consent Decree and the special reservations of rights specified in Section XXIV, Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.     Nothing in this Paragraph shall be construed to limit the Response Agencies' authority to require performance of further response actions as otherwise provided in this Consent Decree.

16. Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, the Remedial Design Work Plan, or Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

17. Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the Response Agencies' Project Coordinators of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

a. The Settling Defendants shall include in the written notification the following information, where available: (i) the name and location of the facility to which the Waste Material is to be shipped; (ii) the type and quantity of the Waste Material to be shipped; (iii) the expected schedule for the shipment of the Waste Material; and (iv) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b. The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Subparagraph 17.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

## VIII. POST-REMEDY RESPONSE WORK AND REMEDY REVIEW

18.    <u>O&M and Post-Remedy Institutional Controls</u>.  After Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, Settling Defendants shall perform O&M and Post-Remedy Institutional Controls Work as required by the ROD, the Final Operation and Maintenance Plan, and the Institutional Controls Plan.  In the event that Settling Defendants fail to perform O&M and Post-Remedy Institutional Controls Work as required by this Paragraph, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State for all costs of the response action not inconsistent with the NCP pursuant to Paragraph 54 (Payment of Specified Future Response Costs).

19.    <u>Periodic Remedy Review and Post-Remedy Monitoring</u>.  Settling Defendants shall conduct any studies and investigations as requested by the Response Agencies, in order to permit the Response Agencies to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.  Such studies and investigations shall include, but shall not be limited to, Post-Remedy Monitoring after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b.  In the event that Settling Defendants fail to conduct such studies and investigations as required by this Paragraph, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State for all costs of the response action not inconsistent with the NCP pursuant to Paragraph 54 (Payment of Specified Future Response Costs).

20. <u>Further Response Actions</u>.

a. If the Response Agencies determine, at any time, that the Remedial Action is not protective of human health and the environment, the Response Agencies may select further response actions for OU1 in accordance with the requirements of CERCLA and the NCP.

b. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by the Response Agencies as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

c. Notwithstanding Paragraph F of Section I (Background), Settling Defendants hereby agree and covenant that the Plaintiffs shall not have to prove and that Settling Defendants shall not contest the following facts with respect to OU1 in response to any administrative order or in any judicial proceeding relating to any further response action the Response Agencies select for OU1 to the extent that the reopener conditions in Paragraph 86 or Paragraph 87 (United States' reservations of liability based on unknown conditions or new information) are satisfied:

(i) Each Settling Defendant is a person who at the time of disposal of a hazardous substance owned or operated a facility from which such hazardous substances were disposed of, and from which there have been releases of hazardous substances which caused the incurrence of response costs for OU1; and

(ii) Each Settling Defendant is a person who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances owned or possessed by the Settling Defendant, by another party or entity, at a facility owned

27

or operated by another party or entity and containing such hazardous substances,

from which there have been releases of hazardous substances which caused the

incurrence of response costs for OU1.

d.      Except as provided by Subparagraph 20.c, nothing herein shall constitute a

waiver of any claim or defense by any Party with respect to any such further response action.

## IX.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.      Settling Defendants shall use quality assurance, quality control, and chain of

custody procedures for all treatability, design, compliance and monitoring samples in accordance

with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003,

March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018,

February 1998), and subsequent amendments to such guidelines upon notification by the

Response Agencies to Settling Defendants of such amendment.  Amended guidelines shall apply

only to procedures conducted after such notification.  Prior to the commencement of any

monitoring project under this Consent Decree, Settling Defendants shall submit to the Response

Agencies for approval a Quality Assurance Project Plan ("QAPP") that is consistent with the

SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties

agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and

approved by the Response Agencies shall be admissible as evidence, without objection, in any

proceeding under this Decree.  Settling Defendants shall ensure that the Response Agencies'

personnel and their authorized representatives are allowed access at reasonable times to all

laboratories utilized by Settling Defendants in implementing this Consent Decree.  In addition,

Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by the

Response Agencies pursuant to the QAPP for quality assurance monitoring.  Settling Defendants

shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by the Response Agencies, Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by the Response Agencies. The Response Agencies may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by the Response Agencies.

22. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by the Response Agencies or their authorized representatives. Settling Defendants shall notify the Response Agencies not less than 15 days in advance of any sample collection activity

unless shorter notice is agreed to by the Response Agencies. In addition, the Response Agencies shall have the right to take any additional samples that the Response Agencies deem necessary. Upon request, the Response Agencies shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Response Work.

23.     Settling Defendants shall submit to the Response Agencies copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to OU1 and/or the implementation of this Consent Decree unless the Response Agencies agree otherwise.

24.     Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## X. ACCESS AND INSTITUTIONAL CONTROLS

25.     If any property where access and/or land/water use restrictions are needed to implement this Consent Decree is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.      commencing on the date of lodging of this Consent Decree, provide the Plaintiffs and their representatives, including the Response Agencies and their contractors, with access at all reasonable times to such property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     monitoring the Response Work;

(2)     verifying any data or information submitted to the Plaintiffs;

(3)       conducting investigations relating to contamination at or near the Site;

(4)       obtaining samples;

(5)       assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)       implementing the Response Work pursuant to the conditions set forth in Paragraph 90 of this Consent Decree;

(7)       inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXVI (Access to Information);

(8)       assessing Settling Defendants' compliance with this Consent Decree; and

(9)       determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.      commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree.

c.      if requested in writing by the Response Agencies, execute and record in the appropriate County land records office, an easement, running with the land, that: (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree, and

31

(ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b of this Consent Decree, or other restrictions that the Response Agencies determine are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to: (i) the United States, on behalf of EPA, and its representatives, (ii) the State, on behalf of WDNR, and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees identified by the Response Agencies. Such Settling Defendants shall, within 45 days after receiving a written request from the Response Agencies, submit to the response Agencies for review and approval with respect to such property:

> (i) a draft easement that is enforceable under the laws of the State of Wisconsin, free and clear of all prior liens and encumbrances (except as approved by EPA), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

> (ii) a current title commitment or report prepared in accordance with the U.S. Department of Justice's Title Standards 2001 (the "Standards").

Within 15 days of EPA's approval and acceptance of the easement, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment or report to affect the title adversely, take the steps necessary to record the easement with the appropriate County land records office. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with final title evidence acceptable under the Standards, and a certified copy of the original recorded easement showing the clerk's recording stamps.