26. If any property where access and/or land/water use restrictions are needed to implement this Consent Decree is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a. an agreement to provide access thereto for Settling Defendants, as well as for the Plaintiffs, on behalf of the response Agencies, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree;

b. an agreement, enforceable by the Settling Defendants and the Plaintiffs, to abide by the obligations and restrictions established by Paragraph 25.b of this Consent Decree, or that are otherwise necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

c. if requested in writing by the Response Agencies, the execution and recordation in the appropriate County land records office, of an easement, running with the land, that: (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b of this Consent Decree, or other restrictions that the Response Agencies determine are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to: (i) the United States, on behalf of EPA, and its representatives, (ii) the State, on behalf of WDNR, and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Settling

33

Defendants shall, within 45 days after receiving a written request from the Response Agencies, submit to the Response Agencies for review and approval with respect to such property:

(i)     a draft easement that is enforceable under the laws of the State of Wisconsin, free and clear of all prior liens and encumbrances (except as approved by the Response Agencies), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

(ii)    a current title commitment or report prepared in accordance with the U.S. Department of Justice's Title Standards 2001 (the "Standards").

Within 15 days of EPA's approval and acceptance of the easement, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment or report to affect the title adversely, take the steps necessary to record the easement with the appropriate County land records office.  Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with final title evidence acceptable under the Standards, and a certified copy of the original recorded easement showing the clerk's recording stamps.

27.     For purposes of Paragraph 26 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, and/or restrictive easements.  If any access or land/water use restriction agreements required by Paragraphs 26.a or 26.b of this Consent Decree are not obtained within 45 days of the Effective Date of this Consent Decree, or if any access easements or restrictive easements required by Paragraph 26.c of this Consent Decree are not submitted to the Response Agencies in draft form within 45 days of receipt of a written request by the Response Agencies, then Settling Defendants shall promptly notify the United States in writing, and shall include in

that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26 of this Consent Decree. The United States and the State may, as they deem appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land. Settling Defendants shall reimburse the United States and the State, as Specified Future Response Costs, for all costs incurred, direct or indirect, by the United States or the State in obtaining such access and/or land/water use restrictions including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.     If any property where access and/or land/water use restrictions are needed to implement this Consent Decree is owned or controlled by the Plaintiffs, the Plaintiffs shall use best efforts to assist the Settling Defendants in securing necessary access and/or land/water use restrictions.

29.     If the Response Agencies determine that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with the Response Agencies' efforts to secure such governmental controls.

30.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## XI.  REPORTING REQUIREMENTS

31.    <u>Monthly RD/RA Progress Reports</u>.

a.    In addition to any other requirement of this Consent Decree, starting with the first month after the Date of Lodging, Settling Defendants shall submit two copies of written Monthly RD/RA Progress Reports to each of the Response Agencies that shall:  (i) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (ii) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (iii) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (iv) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next month and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (v) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Response Work, and a description of efforts made to mitigate those delays or anticipated delays; (vi) include any modifications to the work plans or other schedules that Settling Defendants have proposed to the Response Agencies or that have been approved by the Response Agencies; and (vii) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next month.  Settling Defendants shall submit these progress reports to the Response Agencies by the tenth day of every month following the Date of Lodging until Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b.  During performance of the Remedial Design, the Monthly RD/RA Progress Reports shall include all information required by

36

Paragraph 38 of the July 2003 AOC and shall thereby satisfy the requirement to submit a monthly progress report under the July 2003 AOC and this Consent Decree. If requested by the Response Agencies, Settling Defendants shall also provide briefings for the Response Agencies to discuss the progress of the Response Work.

  b.  The Settling Defendants shall notify the Response Agencies of any change in the schedule described in the Monthly RD/RA Progress Report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

  32. <u>Quarterly Reports</u>. Starting with the second quarter of 2004, the Settling Defendants shall submit Quarterly Reports under this Paragraph to assist the Plaintiffs in monitoring the funding and budgeting of the Response Work and any Approved Restoration Work.

  a.  The Settling Defendants shall submit Quarterly Reports on a quarterly basis for so long as the Remedial Action continues under this Consent Decree, until Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b. For a given calendar year, the Report for the first calendar quarter shall be submitted by no later than May 1 of that calendar year, the Report for the second calendar quarter shall be submitted by no later than August 1 of that calendar year, the Report for the third calendar quarter shall be submitted by no later than November 1 of that calendar year, and the Report for the fourth calendar quarter shall be submitted by no later than February 1 of the next calendar year.

  b.  Each Quarterly Report shall:

    (1)  provide a complete and accurate written cost summary of all Allowable RD/RA Costs submitted to the Escrow Agent for payment from the

Escrow Account during the reporting period, certified in accordance with Subparagraph 32.c;

(2)     specify any amount requested as a periodic disbursement from the Disbursement Special Account to the Escrow Account pursuant to Paragraph 10 and Appendix B;

(3)     provide a complete and accurate written cost summary of all Allowable Restoration Work Costs submitted to the Escrow Agent for payment from the Escrow Account during the reporting period, certified in accordance with Subparagraph 32.c;

(4)     list and total all amounts requested and/or disbursed during the reporting period as payments or reimbursements from the Escrow Account pursuant to Paragraph 11 and Appendix C;

(5)     indicate the approximate balance of the Escrow Account at the end of the reporting period;

(6)     summarize all Response Work and all Approved Restoration Work funded and performed under the Consent Decree during the reporting period; and

(7)     project whether the total balance remaining in the Disbursement Special Account and the Escrow Account is likely to be sufficient to fund the completion of the Remedial Action, after making all other payments and reimbursements from those Accounts that are required under the Consent Decree.

c.     Each Quarterly Report shall contain the following certification signed by the Chief Financial Officer of a Settling Defendant or by an Independent Certified Public Accountant retained by the Settling Defendants:

38

"To the best of my knowledge, after thorough investigation and review of Settling Defendants' documentation of unreimbursed costs incurred and paid for the work summarized in this report that was performed pursuant to the Consent Decree, I certify that the information contained in or accompanying this Quarterly Report is true, accurate, and complete. I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment."

Each Quarterly Report shall include a list of the cost documents that the certifying individuals reviewed in support of the Quarterly Cost Summary Report. Upon request by the Plaintiffs, Settling Defendants shall provide the Plaintiffs any additional information that the Plaintiffs deem necessary for review of a Quarterly Report.

d.      If the Plaintiffs find that a Quarterly Report includes a mathematical error, an accounting error, costs that are not Allowable Response Work Costs or Allowable Restoration Work Costs, costs that are inadequately documented, or costs covered by a prior Quarterly Report, the Plaintiffs will notify Settling Defendants and the Settling Defendants shall cure the deficiency by submitting a revised Quarterly Report.

33.    Release Reporting.

a.      Upon the occurrence of any event during performance of the Response Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Defendants shall within 24 hours of the onset of such event orally notify the Response Agencies' Project Coordinators or the Response Agencies' Alternate Project Coordinators (in the event of the unavailability of the Project Coordinator). If neither the EPA Project Coordinator nor the EPA Alternate Project Coordinator is available, oral notification notice shall be given to the Emergency Response Section, Region 5, United States Environmental Protection Agency.

These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

b.      Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report to Plaintiffs setting forth all actions taken in response thereto.

34.     <u>Submission and Certification of Reports</u>.

a.      Settling Defendants shall submit two hard copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to each of the Response Agencies in accordance with the schedules set forth in such plans. At the same time, the Settling Defendants shall submit an additional copy to each of the Response Agencies in electronic format.

b.      All reports and other documents submitted by Settling Defendants to the Response Agencies (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants, including but not limited to the Settling Defendants' Project Coordinator.

## XII. RESPONSE AGENCIES' APPROVAL OF PLANS AND OTHER SUBMISSIONS

35.     After review of any plan, report or other item which is required to be submitted for approval by the Response Agencies pursuant to this Consent Decree, the Response Agencies shall:  (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) modify the submission to cure the deficiencies; (iv) disapprove, in whole or in

part, the submission, directing that the Settling Defendants modify the submission; or (v) any combination of the above.  However, the Response Agencies shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the Response Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

36.     In the event of approval, approval upon conditions, or modification by the Response Agencies, pursuant to Paragraph 35(i), (ii), or (iii), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by the Response Agencies subject only to their right to invoke the Dispute Resolution procedures set forth in Section XX (Dispute Resolution) with respect to the modifications or conditions made by the Response Agencies.  In the event that a submission has a material defect and the Response Agencies modify the submission to cure the deficiencies pursuant to Paragraph 35(i), the Response Agencies retain their right to seek stipulated penalties, as provided in Section XXI (Stipulated Penalties).

37.     Resubmission of Plans.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 35(iv), Settling Defendants shall, within 30 days or such longer time as specified by the Response Agencies in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XXI, shall accrue during the 30-day period or otherwise specified period but shall not be payable

unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 38 and 39.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 35(iv), Settling Defendants shall proceed, at the direction of the Response Agencies, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XXI (Stipulated Penalties).

38.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by the Response Agencies, the Response Agencies may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  The Response Agencies also retain the right to  modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by the Response Agencies, subject only to their right to invoke the procedures set forth in Section XX (Dispute Resolution).

39.     If upon resubmission, a plan, report, or item is disapproved or modified by the Response Agencies due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution) and the response Agencies' action is overturned pursuant to that Section.  The provisions of Section XX (Dispute Resolution) and Section XXI (Stipulated Penalties) shall govern the implementation of the Response Work and accrual and payment of any stipulated penalties during Dispute Resolution. If the Response Agencies' disapproval or modification is upheld, stipulated penalties shall accrue

for such violation from the date on which the initial submission was originally required, as provided in Section XXI.

40.    All plans, reports, and other items required to be submitted to the response Agencies under this Consent Decree shall, upon approval or modification by the Response Agencies, be enforceable under this Consent Decree.  In the event the Response Agencies approve or modify a portion of a plan, report, or other item required to be submitted to the Response Agencies under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XIII.  PROJECT COORDINATORS

41.    Within 10 days after Settling Defendant WTM I Company's submittal of the Pre-Final (90%) Design, Settling Defendants, WDNR, and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made.  The Settling Defendants' Project Coordinator shall be subject to disapproval by the Response Agencies and shall have the technical expertise sufficient to adequately oversee all aspects of the Response Work.  The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter.  He or she may assign other representatives, including other contractors, to serve as a representative for oversight of performance of daily operations during remedial activities at OU1.

42.    Plaintiffs may designate other representatives, including, but not limited to, EPA and WDNR employees, and federal and State contractors and consultants, to observe and monitor

43

the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project

Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a

Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National

Contingency Plan, 40 C.F.R. Part 300. In addition, the Response Agencies' Project Coordinators

or Alternate Project Coordinators shall have authority, consistent with the National Contingency

Plan, to halt any Response Work required by this Consent Decree and to take any necessary

response action when s/he determines that conditions at the Site constitute an emergency

situation or may present an immediate threat to public health or welfare or the environment due

to release or threatened release of Waste Material.

43.    The Response Agencies' Project Coordinators and the Settling Defendants'

Project Coordinator will meet, at a minimum, on a monthly basis.

XIV. CERTIFICATION OF COMPLETION

44.    <u>Certification of Completion of the Remedial Action for OU1</u>.

a.    Within 90 days after Settling Defendants conclude that the Remedial

Action has been fully performed such that the Performance Standards have been achieved,

Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by

Settling Defendants and the Response Agencies. If, after the pre-certification inspection, the

Settling Defendants still believe that the Remedial Action has been fully performed such that the

Performance Standards have been achieved, they shall submit a written report to the Response

Agencies requesting certification pursuant to Section XII (Response Agencies' Approval of Plans

and Other Submissions) within 60 days of the inspection. In the report, a registered professional

engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action

has been completed in full satisfaction of the requirements of this Consent Decree. The written

44

report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree such that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action such that the Performance Standards are achieved; provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XII (Response Agencies' Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree such that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXII (Covenants Not to Sue by Plaintiffs). Except as expressly provided by this Consent Decree, Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

45.     Certification of Completion of the Response Work for OU1.

a.     Within 90 days after Settling Defendants conclude that all phases of the Response Work (including O&M, Post-Remedy Institutional Controls Work, and Post-Remedy Monitoring) have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and the Response Agencies. If, after the pre-certification inspection, the Settling Defendants still believe that the Response Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Response Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

46

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Response Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Response Work; provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XII (Response Agencies' Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Response Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

XV.  EMERGENCY RESPONSE

46.     In the event of any action or occurrence during the performance of the Response Work which causes or threatens a release of Waste Material at or from OU1 that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 47, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately

notify the Response Agencies' Project Coordinators, or, if a Response Agency Project Coordinator is unavailable, the Response Agency's Alternate Project Coordinator. If neither the EPA Project Coordinator nor the EPA Alternate Project Coordinator is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 5. Settling Defendants shall take such actions in consultation with the EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State for all costs of the response action not inconsistent with the NCP pursuant to Paragraph 54 (Payment of Specified Future Response Costs).

47.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, to: (i) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (ii) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material at or from the Site, subject to Section XXII (Covenants Not to Sue by Plaintiffs).

## XVI.  NATURAL RESOURCE RESTORATION EFFORTS

48.     <u>Settling Defendants' Performance of Approved Restoration Work</u>.  As provided by the following Subparagraphs, the Settling Defendants may propose to the Plaintiffs or the Plaintiffs may propose to the Settling Defendants that the Settling Defendants perform certain

48

natural resource restoration work under this Consent Decree, with the costs to be paid or reimbursed from the Escrow Account.

        a.      Any restoration work that the Parties agree will be performed by one or both of the Settling Defendants under this Paragraph shall be performed in accordance with a written Project Implementation Plan, jointly approved by the Plaintiffs and by the other Trustees, as represented by the Trustee Council ("Approved Restoration Work"). The Project Implementation Plan shall: (i) describe the restoration work to be performed by one or both of the Settling Defendants; (ii) establish a schedule for performance of the work; and (iii) establish a project budget and a pre-approved cost ceiling for the work. The Project Implementation Plan (including the project budget and the pre-approved cost ceiling) may be revised during the course of the work by a written amendment approved by the Parties to this Consent Decree and by the other Trustees.

        b.      All Approved Restoration Work shall be consistent with the Trustees' Joint Restoration Plan and Environmental Assessment for the Lower Fox River and Green Bay (the "Restoration Plan").

        c.      All of the Settling Defendants' Allowable Restoration Work Costs (as defined by Subparagraph 9.b) for Approved Restoration Work shall be paid or reimbursed from the Escrow Account in accordance with Paragraph 11 of this Consent Decree and Appendix C. Dispute resolution provisions and force majeure provisions for Approved Restoration Work are set forth in Appendix E, which is incorporated herein by reference.

        d.      As provided by Paragraph 32, each Quarterly Report submitted to the Plaintiffs under this Consent Decree shall include, among other things, a complete and accurate written cost summary of all Allowable Restoration Work Costs for the reporting period, and a

summary of all Approved Restoration Work funded and performed under this Paragraph during the reporting period.

e.      Within 60 days after completing all Approved Restoration Work under a particular Project Implementation Plan, the Settling Defendants shall submit a Final Project Report to DOI and WDNR summarizing: (i) all Approved Restoration Work performed under the Plan; and (ii) the total Allowable Restoration Work Costs for the Approved Restoration Work performed under the Plan. DOI and WDNR shall in turn provide the other Trustees copies of each Final Project Report.

49.      <u>Trustee-Sponsored Natural Resource Restoration Efforts</u>.

a.      All funds paid and disbursed to a Site-specific sub-account within the NRDAR Fund under Paragraph 53 shall be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration efforts in accordance with the Restoration Plan. Consistent with the Restoration Plan, all such funds shall be applied toward the costs of restoration, rehabilitation, or replacement of injured natural resources at the Site, and/or acquisition of equivalent resources, including but not limited to any administrative costs and expenses necessary for, and incidental to, restoration, rehabilitation, replacement, and/or acquisition of equivalent resources planning, and any restoration, rehabilitation, replacement, and/or acquisition of equivalent resources undertaken.

b.      Decisions regarding any dedication or expenditure of funds under this Paragraph shall be made by the Trustees, acting through the Trustee Council. Settling Defendants shall not be entitled to dispute – under Section XX (Dispute Resolution) or in any other forum or proceeding – any decision relating to funds or restoration efforts under this Paragraph.

50

## XVII.  PAYMENTS

50.    Payments Into the Escrow Account.

a.    Timing and Amount of Payments.  Each Settling Defendant shall pay a total of $26,250,000 into the Escrow Account in accordance with the following schedule: (i) each Settling Defendant shall deposit $10,500,000 into the Escrow Account by no later than March 31, 2004; and (ii) each Settling Defendant shall deposit an additional $15,750,000 into the Escrow Account by no later than June 30, 2004.  The payment requirements of this Paragraph are several obligations only, not joint obligations.

b.    Nature of the Payments.  Each Settling Defendant's payment under this Paragraph includes the following:  (i) $25,000,000 to fund the Remedial Action; and (ii) $1,250,000 to fund a portion of the NRD Commitment.

51.    Disbursements from the Escrow Account

a.    As provided by this Consent Decree and Appendix C, certain funds from the Escrow Account shall be disbursed to the United States and the State as payment of sums due under this Consent Decree, and certain other funds from Escrow Account shall be disbursed to the Settling Defendants for payment or reimbursement of Allowable RD/RA Costs and/or Allowable Restoration Work Costs.

b.    It is anticipated that certain funds may be disbursed from the Escrow Account for payment of certain Allowable RD/RA costs and/or Allowable Restoration Work Costs even before the Effective Date.  In the event the Plaintiffs withdraw or withhold consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, the unexpended balance of the Escrow Account shall be disbursed to the Settling Defendants at their request.

51

52. <u>Initial Payments to Plaintiffs</u>.

a. <u>Initial Payments to the United States</u>. Within 30 days after the Date of Lodging, the Settling Defendants shall pay a total of $1,040,000 directly to the United States, with each Settling Defendant being responsible for paying one-half of that total amount ($520,000 each). The $1,040,000 paid to the United States under this Subparagraph shall be applied as follows: (i) $740,000 shall be directed to the Fox River Site Special Account within the EPA Hazardous Substance Superfund, as the EPA Past Cost Payments, and shall be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund; and (ii) $300,000 shall be directed to the DOI NRDAR Fund, as the DOI Past Cost Payments.

b. <u>State Past Cost Payments</u>. Within 30 days after the Date of Lodging, the Settling Defendants shall pay a total of $10,000 directly to the State, as the State Past Cost Payments, with each Settling Defendant being responsible for paying one-half of that total amount ($5,000 each).

c. The payment requirements of this Paragraph are several obligations only, not joint obligations.

53. <u>Subsequent Payments and Disbursements for Natural Resource Restoration</u>. As provided by this Paragraph and by Appendix C, a total of $3,000,000 shall be paid and disbursed as the NRD Commitment.

a. By no later than January 31, 2004, the Settling Defendants shall pay a total of $500,000 of the NRD Commitment directly to a Site-specific sub-account within the DOI NRDAR Fund, with each Settling Defendant being responsible for paying one-half of that total amount ($250,000 each), to finance Trustee-sponsored natural resource damage restoration

efforts under Paragraph 49. The payment requirements of this Subparagraph are several obligations only, not joint obligations.

b. The remaining $2,500,000 of the NRD Commitment shall be disbursed from the Escrow Account in accordance with the schedule and requirements of Appendix C: (i) for payment or reimbursement of Allowable Restoration Work Costs incurred for Approved Restoration Work to be performed by the Settling Defendants under Paragraph 48; and/or (ii) for payment to a Site-specific sub-account within the DOI NRDAR Fund, to finance Trustee-sponsored natural resource damage restoration efforts under Paragraph 49.

54. <u>Reimbursement of Specified Future Response Costs</u>.

a. <u>EPA Reimbursement</u>. All Specified Future Response Costs incurred by the United States shall be reimbursed as follows:

(1) Except for costs under Section XV (Emergency Response) that are payable under Subparagraph 54.a.(2), all Specified Future Response Costs incurred and billed by the United States before Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b shall be reimbursed from the Escrow Account as provided by Appendix C, to the extent that such costs are not inconsistent with the National Contingency Plan.

(2) The Settling Defendants shall make direct payments to EPA for any Specified Future Response Costs incurred by the United States under Section XV (Emergency Response) and for any Specified Future Response Costs incurred and/or billed by the United States after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, to the extent such costs are not inconsistent with the National Contingency Plan. On a periodic basis, the United States will send Settling Defendants a bill requiring payment that includes an EPA cost summary, showing direct and indirect costs incurred by EPA

53

and its contractors, and a DOJ cost summary, showing costs incurred by DOJ and its contractors, if any. Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided by Paragraph 68.

(3)    All payments and disbursements received by EPA under this Subparagraph 54.a shall be deposited in the Fox River Site Special Account within the EPA Hazardous Substance Superfund, and shall be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund.

b.    State Reimbursement. All Specified Future Response Costs incurred by the State shall be reimbursed as follows:

(1)    Except for costs under Section XV (Emergency Response) that are payable under Subparagraph 54.b.(2), all Specified Future Response Costs incurred and billed by the State before Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b shall be reimbursed from the Escrow Account as provided by Appendix C, to the extent that such costs are not inconsistent with the National Contingency Plan.

(2)    The Settling Defendants shall make direct payments to the State for any Specified Future Response Costs incurred by the State under Section XV (Emergency Response) and for any Specified Future Response Costs incurred and/or billed by the State after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, to the extent such costs are not inconsistent with the National Contingency Plan. On a periodic basis, the State will send Settling Defendants a bill requiring payment that includes a WDNR cost summary, showing direct and indirect costs incurred by WDNR and its contractors, and a WDOJ cost summary, showing costs incurred by WDOJ and its contractors, if any. Settling Defendants

54

shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided by Paragraph 68.

      c.     The payment requirements of this Paragraph are joint obligations of both Settling Defendants, not several obligations.

     55.    <u>Payment Instructions</u>.

        a.     <u>Payments to the United States</u>.

           (1)     <u>Initial Payments to the United States</u>. The Initial Payments to the United States under Subparagraph 52.a shall be paid by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing the Lower Fox River and Green Bay Site and DOJ Case Number 90-11-2-1045/2. Payment shall be made in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Wisconsin after the Date of Lodging. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day. At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to DOJ, DOI, and EPA in accordance with Section XXVIII (Notices and Submissions) and to:

       Financial Management Officer
       U.S. Environmental Protection Agency, Region 5
       Mail Code MF-10J
       77 W. Jackson Blvd.
       Chicago, IL   60604

Of the $1,040,000 total amount paid to the United States under Subparagraph 52.a:  (i) $740,000 shall be deposited in the Fox River Site Special Account, to be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund; and (ii) $300,000 shall be deposited in the DOI NRDAR Fund.

(2)     All Other Payments to EPA.  Except as provided by Subparagraph 55.a.(1), all payments to EPA under this Section or under Appendix C shall:  (i) be made by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund, Fox River Site Special Account;" (ii) reference the Lower Fox River and Green Bay Site, EPA Site/Spill ID Number A565, and DOJ Case Number 90-11-2-1045/2; and (iii) indicate that the payment is for Specified Future Response Costs payable pursuant to this Consent Decree.  All payments to EPA under Section XXI (Stipulated Penalties and Stipulated Damages) shall:  (i) be made by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund;" (ii) reference the Lower Fox River and Green Bay Site, EPA Site/Spill ID Number A565, and DOJ Case Number 90-11-2-1045/2; and (iii) indicate that the payment is for stipulated penalties payable pursuant to this Consent Decree.  All payments under this Subparagraph 55.a.(2) shall be sent to:

> U.S. Environmental Protection Agency, Region 5
> Program Accounting and Analysis Branch
> P.O. Box 70753
> Chicago, IL   60673

At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to DOJ and EPA in accordance with Section XXVIII (Notices and Submissions) and to:

> Financial Management Officer
> U.S. Environmental Protection Agency, Region 5
> Mail Code MF-10J
> 77 W. Jackson Blvd.
> Chicago, IL   60604

(3)     All Other Payments to the DOI NRDAR Fund.  Except as provided by Subparagraph 55.a.(1), all payments to the DOI NRDAR Fund under this Section or under Appendix C shall:  (i) be made by an electronic funds transfer transaction in accordance with

transfer instruction to be provided by the United States; (ii) reference the Lower Fox River and Green Bay Site and DOJ Case Number 90-11-2-1045/2; and (iii) indicate that the payment is being made pursuant to this Consent Decree with WTM I Company and P. H. Glatfelter Company. At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to DOI, DOJ, WDNR, and WDOJ in accordance with Section XXVIII (Notices and Submissions) and to:

> Department of the Interior
> Natural Resource Damage Assessment and Restoration Program
> Attn: Restoration Fund Manager
> 1849 C Street, N.W.
> Mailstop 4449
> Washington, DC 20240

DOI shall in turn notify the other Trustees that a payment to the DOI NRDAR Fund has been received under this Subparagraph.

(4) Payments to the United States for Stipulated Damages Under Paragraph 74. All payments to the United States under Paragraph 74 (Stipulated Damages Amounts - NRD Commitment) shall: (i) be made by a certified or cashier's check or checks made payable to "Treasurer, United States of America;" (ii) be tendered to the Financial Litigation Unit of the Office of the United States Attorney for the Eastern District of Wisconsin; and (iii) be accompanied by a letter referencing the Lower Fox River and Green Bay Site and indicating that the payment is for stipulated damages payable pursuant to Paragraph 74 of this Consent Decree with WTM I Company and P. H. Glatfelter Company. At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to DOI and DOJ in accordance with Section XXVIII (Notices and Submissions).

b.    <u>Payments to the State</u>.  All payments to the State under this Section or under Section XXI (Stipulated Penalties and Stipulated Damages) shall:  (i) be made by a certified or cashier's check or checks made payable to "Wisconsin Department of Natural Resources;" (ii) reference the Lower Fox River and Green Bay Site; (iii) indicate that the payment is being made pursuant to this Consent Decree with WTM I Company and P. H. Glatfelter Company; and (iv) be sent to:

> Wisconsin Department of Natural Resources
> Attn:  Greg Hill, State Project Coordinator
> 101 S. Webster St.
> Madison, WI  53703

At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to the State in accordance with Section XXVIII (Notices and Submissions).

XVIII.  INDEMNIFICATION AND INSURANCE

56.    <u>Settling Defendants' Indemnification of the United States and the State</u>.

a.    The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendants

58

agree to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

      b.     The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 56, and shall consult with Settling Defendants prior to settling such claim.

      c.     Nothing contained in this Consent Decree is intended to limit Settling Defendants' potential for insurance coverage.

    57.    Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Response Work on or relating to OU1 or any Approved Restoration Work, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Response Work on or

relating to OU1 or any Approved Restoration Work, including, but not limited to, claims on account of construction delays.

58.     No later than 15 days before commencing any on-site Remedial Design work under this Consent Decree, Settling Defendant WTM I Company shall secure, and shall maintain throughout the Remedial Design, comprehensive general liability insurance with limits of 1 million dollars, combined single limit, and automobile liability insurance with limits of 1 million dollars, combined single limit, naming the United States and the State as additional insureds. No later than 15 days before commencing any on-site Remedial Action work under this Consent Decree, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 44.b, comprehensive general liability insurance with limits of 5 million dollars, combined single limit, and automobile liability insurance with limits of 2 million dollars, combined single limit, naming the United States and the State as additional insureds. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Response Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Response Work under this Consent Decree, Settling Defendants shall provide the Response Agencies certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to the Response Agencies that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or

60

subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor. Costs incurred by Settling Defendants to comply with this paragraph shall be considered Allowable RD/RA Costs.

## XIX. FORCE MAJEURE EVENTS

59.     Except as provided by Paragraph 2 of Appendix E, if any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure Event, the Settling Defendants or their contractors shall orally notify the Response Agencies' Project Coordinators or, in a Response Agency's Project Coordinator's absence, the response Agency's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, Superfund Division Director for EPA Region 5, within 5 working days of when Settling Defendants first knew that the event might cause a delay. Within 10 working days thereafter, Settling Defendants shall provide the Response Agencies a written explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a Force Majeure Event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a Force Majeure Event. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of a Force Majeure Event for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be

61

deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

60.     If EPA, after a reasonable opportunity for review and comment by WDNR, agrees that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure Event will be extended by EPA, after a reasonable opportunity for review and comment by WDNR, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure Event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by WDNR, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure Event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by WDNR, agrees that the delay is attributable to a Force Majeure Event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure Event.

61.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure Event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 57 and 58, above. If Settling Defendants carry this burden, the delay at issue shall be

deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XX. DISPUTE RESOLUTION

62.     Except as provided by Paragraph 3 of Appendix E, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes between Settling Defendants and the Plaintiffs arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the Plaintiffs to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section. The dispute resolution procedures of this Section shall not apply to any disputes between Settling Defendants and the Plaintiffs not arising under or with respect to this Consent Decree.

63.     <u>Informal Dispute Resolution</u>. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

64.     <u>Formal Dispute Resolution</u>.

a.     Except as provided by Paragraph 3 of Appendix E, in the event that the parties cannot resolve a dispute by informal negotiations under Paragraph 63, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the Plaintiffs a written Statement of Position on the matter in

dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 65 or Paragraph 66.

b.      Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 65 or 66. Within 10 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.      If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 65 or 66, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 65 and 66.

65.      Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action, any disputes under Paragraph 98, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (i) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by the Response Agencies under this Consent Decree; and (ii) the adequacy of the performance

of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants under this Consent Decree regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Superfund Division Director for EPA Region 5 will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 65.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Subparagraphs 65.c and d.

c.     Any administrative decision made by EPA pursuant to Subparagraph 65.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 20 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States and the State may file a response to Settling Defendants' motion.

d.     In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director for EPA Region 5 is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Subparagraph 65.a.

66. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a. Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 64, and after service of EPA's Statement of Position and any Reply, the Superfund Division Director for EPA Region 5 will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 20 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

b. Notwithstanding Paragraph K of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

67. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 79. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XXI (Stipulated Penalties).

68. <u>Disputes Regarding Specified Future Response Costs</u>. Settling Defendants may contest payment of any Specified Future Response Costs under Paragraph 54 if they determine that the United States or the State has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. For any such costs incurred and billed before Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, notice of any such objection shall be submitted in writing as provided by Subparagraph 5.c of Appendix C. For any such costs incurred and billed after Certification of Completion of Remedial Action by EPA pursuant to Subparagraph 44.b, notice of any such objection shall be given in writing within 30 days of receipt of the bill. A copy of any notice of objection shall be sent to the United States (if the United States' accounting is being disputed) or to the State (if the State's accounting is being disputed) pursuant to Section XXVIII (Notices and Submissions). Any such notice of objection shall specifically identify the contested Specified Future Response Costs and the basis for objection. In the event of an objection, all uncontested Specified Future Response Costs shall immediately be paid to the United States or the State in the manner described in Paragraph 54. Upon submitting a notice of objection, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XX (Dispute Resolution). If the United States or the State prevails in the dispute, within 10 days of the resolution of the dispute, all sums due (with accrued Interest) shall be paid to EPA (if the United States' cost are disputed) or to the State (if the State's costs are disputed) in the manner described in Paragraph 54. If the Settling Defendants prevail concerning any aspect of the contested costs, the portion of the costs (plus associated accrued interest) for which they did not prevail shall be

67