# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
and the STATE OF WISCONSIN,
        Plaintiffs,

    v.                                    Case No. 03-C-0949

P.H. GLATFELTER COMPANY
and WTM I COMPANY,
            Defendants.

## DECISION AND ORDER

Plaintiffs, United States and State of Wisconsin, bring this action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, alleging that defendants, P. H. Glatfelter Company and WTM I Company, are among the parties responsible for PCB contamination at Operable Unit 1 ("OU1"), one of five units in a larger site.  This suit is part of ongoing litigation concerning contamination in the Fox River and Green Bay,  See, e.g., United States v. Fort James Operating Co., Case No. 02-C-0602 (E.D. Wis. March 19, 2004).  The parties have filed a proposed "Consent Decree for Remedial Design and Remedial Action at Operable Unit 1 of the Lower Fox River and Green Bay Site."  Before me now is plaintiffs' motion to enter the proposed consent decree.  Defendants also support the motion.

### I.  THE SETTLEMENT

Under the settlement described in the proposed consent decree, defendants will implement the cleanup remedy for OU1 that was selected in a December 2002 Record of Decision issued jointly by the U.S. Environmental Protection Agency ("EPA") and the

Wisconsin Department of Natural Resources ("WDNR"). Defendants will pay for the remedial action work using a specially-dedicated fund to be established by defendants. That fund will ultimately hold more than $60 million, including $50 million from defendants, and an additional $10 million available from a prior EPA/WDNR settlement with Appleton Papers Inc. and NCR Corporation, and all interest earned on the money placed in the fund. If the dedicated fund is not sufficient to finance the completion of the work, the proposed consent decree reserves plaintiffs' rights to require defendants to perform or pay for the continuation and completion of the work. The settlement would not resolve defendants' potential liability for response activities or response costs relating to areas of the site other than OU1.

The proposed consent decree also requires defendants to pay $3 million for natural resource damages and $1,050,000 as partial reimbursement of past costs incurred by EPA, WDNR, and the U.S. Department of the Interior. It does not resolve defendants' potential liability for payment of additional natural resource damages or for additional unreimbursed past costs incurred by plaintiffs.

In accordance with CERCLA § 122(d)(2), 42 U.S.C. § 9622(d)(2), the U.S. Department of Justice published notice of the lodging of the proposed consent decree in the Federal Register to commence a thirty day public comment period. Sixteen comments were received, and they are attached to the proposed consent decree as an appendix. In general, the comments express concern about the chosen clean-up remedy, landfill disposal of dredged sediment. They urge me to delay entry of the proposed consent decree to permit further citizen and local government efforts to convince EPA and WDNR

2

that a better remedy would be an innovative sediment melting process known as vitrification.

## II. STANDARD OF REVIEW

It is well settled that in reviewing a CERCLA consent decree, a district court must satisfy itself that the settlement is reasonable, fair, and consistent with the statutory purposes of CERCLA.  United States v. Davis, 261 F.3d 1, 20 (1st Cir. 2001); see also United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1435 (6th Cir. 1991); United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990).

Review of a CERCLA consent decree is committed to the discretion of the district court.  Cannons Eng'g, 899 F.2d at 84. However, this review involves "[c]onsiderable deference."  Davis, 261 F.3d at 21 (stating that a reviewing court must defer to the administrative agency's construction of the settlement); see also Akzo Coatings, 949 F.2d at 1436 (stating that judicial deference to settlements reached by the parties to CERCLA litigation is "particularly strong" when that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field"); Cannons Eng'g, 899 F.2d at 84 ("That so many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance.").

The reviewing court must also keep in mind the strong policy favoring voluntary settlement of litigation.  United States v. Hooker Chem. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985); Metro. Housing Dev. Corp. v. Vill. of Arlington Heights, 616 F.2d 1006,

Case 2:03-cv-00949-LA    Filed 04/12/04    Page 3 of 6    Document 22

1014 (7th Cir. 1980). "While the district court should not mechanistically rubberstamp the agency's suggestions, neither should it approach the merits of the contemplated settlement de novo." Cannons Eng'g, 899 F.2d at 84. The test is not whether this court would have fashioned the same remedy nor whether it is the best possible settlement. Id.

### III. DISCUSSION

I find that the proposed consent decree is reasonable, fair and consistent with CERCLA's statutory purposes. The major policy concerns underlying CERCLA are as follows: ____

> First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

Cannons Eng'g, 899 F.2d at 90-91; see also Davis, 261 F.3d at 26 ("The purposes of CERCLA include expeditious remediation at waste sites, adequate compensation to the public fisc and the imposition of accountability.").

Further, there is a strong statutory preference for settlement in CERCLA cases. See B.F. Goodrich v. Betkoski, 99 F.3d 505, 527 (2d Cir. 1996), abrogation on other grounds recognized by New York v. Nat'l Servs. Indus., Inc., 352 F.3d 682 (2d Cir. 2003) ("Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."). Settlements in CERCLA cases promote one of CERLCA's primary goals -- expeditious remediation. See United States v. DiBiase, 45 F.3d 541, 545 (1st Cir. 1995) ("[S]ettlements reduce excessive litigation

4

expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites"); In re Acushnet River, 712 F. Supp. 1019, 1027 (D. Mass. 1989) (stating that it was "Congress' intent to encourage CERCLA settlements and reduce the time and expense of enforcement litigation that necessarily diverts money from cleanup and restoration").

In the present case, the settlement is consistent with the goals underlying CERCLA. First, it ensures prompt performance of the selected cleanup remedy for OU1. The settlement requires defendants to remove a large volume of contaminated sediment, thereby reducing PCB transport to downstream portions of the river and Green Bay, reducing human exposure to PCBs from OU1, and reducing PCB levels in fish and birds in and around OU1. Second, the settlement requires the responsible parties to fund the cleanup, thereby imposing accountability on defendants. Third, the settlement is consistent with CERCLA's strong statutory preference for settlement, thereby allowing scarce resources to be applied towards cleanup rather than towards litigation and transaction costs. See Davis, 261 F.3d at 26.

The settlement also appears fair and reasonable. It is the product of seven months of what plaintiffs characterize as difficult negotiations among the parties. Plaintiffs avow that the negotiations were conducted at arms-length by legal and technical representatives from the government agencies responsible for implementing and enforcing CERCLA. Furthermore, the amount of the settlement appears to be adequate. Indeed, even if it were inadequate to cover the entire cost of the cleanup remedy, the settlement reserves to plaintiffs the right to have defendants perform or pay for any additional required work.

5

Many of the commenters urged me simply to delay entry of the consent decree because of a pending petition to EPA and WDNR to amend the Record of Decision for OU1 by substituting vitrification for landfill disposal. The agencies have since responded to the petition with an explanation of why they continue to regard landfill disposal as a better cleanup remedy for OU1 than vitrification. Additionally, the agencies initially arrived at landfill disposal as the chosen cleanup remedy in a process that complied with the procedures and remedy selection criteria specified by the regulations governing hazardous substance response, see 40 C.F.R. §§ 300.400 - 300.440, and that included opportunities for public response. So, although I am sympathetic to the concerns of the surrounding communities, I conclude that, on balance, delay in approving the proposed consent decree would be undesirable.

## IV.  CONCLUSION

For the reasons stated,

**IT IS ORDERED** that plaintiffs' motion to enter the proposed consent decree is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 12 day of April 2004.


/s_____
LYNN ADELMAN
District Judge

6