UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA<br>and the STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>P. H. GLATFELTER COMPANY<br>and<br>WTM I COMPANY<br>(f/k/a Wisconsin Tissue Mills Inc.),<br><br>Defendants. | CIVIL ACTION NO. 03-c-0949<br><br>The Honorable Lynn Adelman |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT P.H. GLATFELTER COMPANY FOR A CASE MANAGEMENT ORDER**

At every public and private juncture since 1991, the State of Wisconsin has stated its position that the P.H. Glatfelter Company ("Glatfelter") bears responsibility to clean up sediment contamination throughout the Fox River. Various federal agencies joined that chorus in 1994, and the Environmental Protection Agency ("EPA") in 1996. These plaintiffs have made representations to this Court to that effect. *See, e.g.* Plaintiffs' Joint Brief in Support of Motion to Enter Consent Decree with Fort James Operating Co., *United States v. Fort James Operating Co.*, No. 2:02-cv-00602-LA (E.D. Wis. Mar. 28, 2003) (Doc. 40) at 1, 17-20. Plaintiffs' response to this motion runs away from the suggestion that they made that allegation in their Complaint. That reluctance to prove what they have been saying for almost a generation should speak volumes, and certainly frustrates Glatfelter, a company whose existence has been threatened continuously by that allegation for years.

**1. The Complaint means what it says.**

Plaintiffs' response to this motion includes a lot of material, but most of it is beside the point. The Court should grant this motion if plaintiffs' Third Claim for Relief states a claim of liability under section 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9606(a), to abate an endangerment to the environment arising from releases of hazardous substances "from" Operable Unit 1 ("OU1"). The Third Claim for Relief reads as follows in its entirety[1]:

> THIRD CLAIM FOR RELIEF
> (Injunctive Relief Under CERCLA Section 106, 42 U.S.C. § 9606)
>
> 18. Paragraphs 1-13 are realleged and incorporated herein by reference.
>
> 19. The United States Environmental Protection Agency has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual or threatened releases of hazardous substances into the environment at and from OU1.
>
> 20. Pursuant to Section 106(a), 42 U.S.C. § 9606(a), the Defendants are subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances into the environment at and from OU1.

The Third Claim for Relief contains no separate prayer for relief.

One cannot read the Third Claim for Relief *not* to allege liability for downstream response actions. Paragraph 19 pleads that a release of hazardous substances "from OU1" is occurring on October 1, 2003 (the date of the Complaint). Paragraph 20 alleges that defendants are liable to abate a threat presented by that release "from OU1." If the release was "from OU1" at or before the time of the Complaint, and if it posed a threat to the environment at the time of

---

[1] Nowhere in plaintiffs' brief do they quote paragraphs 18-20 of their Complaint.

the Complaint, then the hazardous substances posing that threat were downstream of OU1 on the date of the Complaint, the threat they posed was downstream of OU1 on the date of the Complaint, and abating that threat would have to require work downstream of OU1. Thus, Glatfelter has not given this claim a tortured reading. To the contrary, the natural reading of the Third Claim for Relief is that it seeks an injunction under CERCLA section 106 to abate the threat presented by releases from OU1 by doing work where those hazardous substances have come to present that threat.

Moreover, plaintiffs have confirmed in formal filings with this Court that their Complaint alleges defendants' liability for the entire river, even though the Consent Decree only calls for work in OU1:

> The Plaintiffs filed this action on October 1, 2003, alleging that the Defendants are among the parties liable for environmental contamination *at the Lower Fox River and Green Bay Site ("Site")* pursuant to [CERCLA]. At the same time, the United States lodged with the Court a proposed Consent Decree . . . . The Consent Decree requires the Defendants to perform sediment remediation work at the *portion of the Site* that has been designated as Operable Unit 1 ("OU1").

Agreed Supplement to Consent Decree ¶¶ 1-2 (Mar. 28, 2007)(Doc. No. 23)(emphasis added); Second Agreed Supplement to Consent Decree ¶¶ 1-2 (as corrected Nov. 13, 2007)(Doc. No. 26)(emphasis added). The Complaint alleges liability for the whole Site, while the Consent Decree calls for work in only a portion. Thus, the Complaint *must* allege liability for more than work in OU1.

Plaintiffs cannot now claim that they never really meant to allege that defendants were liable downstream of OU1. They pleaded it. They confirmed in the supplements to the Consent Decree that that was what they meant. If that claim is not settled, then it should be litigated in an orderly way. Glatfelter has proposed a way of structuring that lawsuit so that it

remains manageable for all parties and resolves key issues in a timely fashion.  Accordingly, Glatfelter's motion should be granted.

### 2. Plaintiffs intended their Complaint to mean what it says.

Plaintiffs' brief suggests that they did not intend their Complaint to plead anything about portions of the Site downstream of OU1.  Therefore, as "masters of their complaint," plaintiffs argue that the Court should ignore what the Complaint says, and look to what plaintiffs now say they meant it to say.  Plaintiffs further argue that as this case was only filed to allow entry of the OU1 Consent Decree, the Complaint has to be read as an OU1-only pleading.

This argument has three problems.  First, as discussed above, the Complaint is not susceptible of the reading plaintiffs would now put on it.  Second, plaintiffs have characterized the Complaint consistently with Glatfelter's reading in both supplements to the Consent Decree.  Third, plaintiffs intended the Complaint to plead whole-river liability in order to achieve tactical advantage.

The Court should bear in mind that, contrary to a typical lawsuit, in this case the parties negotiated and executed a consent decree before the plaintiffs ever drafted a complaint.  Thus, the Complaint here was drafted with the Consent Decree in mind.  The Consent Decree sets out what would have been a perfectly suitable way of pleading the claim for injunctive relief if the plaintiffs had *only* sought "performance of response work by the defendants at Operable Unit 1 . . . of the Site . . . ."  Consent Decree ¶ B.  However, the Complaint only seeks that relief "inter alia."  *Id.*  The Complaint used different language in the Third Claim for Relief because it sought *more* than the relief recited in paragraph B of the Consent Decree.  Given that the parties had negotiated a consent decree calling only for response actions "at" OU1, plaintiffs' use of the

phrase "at and from OU1" twice in the Complaint stands out.  Plaintiffs pleaded liability for the whole river, even though they only sought work from these defendants in OU1.

Plaintiffs made the broader pleading to achieve tactical advantage.  As explained in the two Agreed Supplements, the Consent Decree in this case only obligates defendants to conduct response actions in OU1 within a fixed budget.  When the funds committed to the OU1 response action are exhausted, defendants can agree to commit additional money or the United States may terminate the protections of the Consent Decree.  Consent Decree ¶ 98; Agreed Supplement ¶ 3; Second Agreed Supplement ¶ 3.  Indeed, the two supplements to the Consent Decree reflect two separate negotiations to obtain additional funding and, on their face, those two documents reflect commitment of an additional $19 million ($12 million from defendants and $7 million from non-party Menasha Corporation) toward the OU1 response actions in order to avoid termination of the Consent Decree.

Plaintiffs knew in 2003 that they might need a threat of further litigation to get more from defendants than defendants had originally committed.  If that had not been a possibility, the Consent Decree would not include paragraph 98, the reservation of rights to which plaintiffs refer.  Among the threats that plaintiffs constructed was the broader liability pleading in the Complaint.  If the United States terminated the Consent Decree, the claim that would have been pending in this Court would have been the Third Claim for Relief.  That claim seeks to establish liability for releases "from OU1," and not just for cleanup "at" OU1.  Accordingly, by making the broader allegation in the Complaint, plaintiffs positioned themselves for back-end negotiations on commitments of funds.  They recognize as much in the two supplements.

For this reason, not only do plaintiffs urge a misreading of the Complaint upon the Court, they urge an unfair misreading. They want to have their cake and to eat it too. They crafted the Complaint to allege downstream liability. That claim is not resolved. Therefore, it should be litigated in an orderly fashion.

### 3. The Consent Decree is only a final judgment of those claims that it finally adjudicates.

Plaintiffs contend that the Consent Decree constitutes a "final judgment" and therefore that it ended all litigation of all claims in this action. Paragraph 125 of the Consent Decree provides:

> Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

The second sentence of that paragraph is not entirely redundant. It is the finding and order required by Federal Rule of Civil Procedure 54(b) when a court enters a final judgment as to *fewer than all* of the claims in a case:

> When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). The phrase "no just reason for delay" does not appear anywhere else in Rules 54 or 58. Accordingly, the very language upon which the plaintiffs rely necessarily implies that the Consent Decree did not resolve all of the claims in the case; some claims *that had been pleaded* and were already in the action were not resolved by the Consent Decree.

Further, the very structure of the Consent Decree argues against viewing it as the end of litigation among these parties. As noted above, the United States reserved the right to terminate all parties' Consent Decree rights and obligations with respect to work in OU1 that defendants did not complete after they exhausted the committed funds. Consent Decree ¶ 98. At that point, plaintiffs could seek to obtain that injunctive relief by litigating the claims they had already filed in this case.

Defendants have waived the defense of claim splitting, but they have not waived the defense of prior pending action. If this case were pending, the United States or the State could not, as a practical matter, file a new action in this Court seeking the same relief. This case is here. It is either settled or it is not. If it is not, then it should be litigated.

**4.    Glatfelter is not seeking to challenge a remedy or an administrative order in contravention of section 113(h) of CERCLA.**

Glatfelter states in its motion the reasons for the relief it seeks. Glatfelter does not intend to file any action to attack the OU2-5 UAO or to use any judgment in this case as a "sword" against the governments' enforcement actions. The United States and the State of Wisconsin sued Glatfelter. Glatfelter believed that its commitment to clean up the part of the river into which Glatfelter's predecessor discharged would have satisfied the governments that Glatfelter had done its part toward addressing the Fox River's PCB contamination. After all, the plaintiffs in this case seemed satisfied, provided that Glatfelter continued to fund the clean up in OU1 as costs escalated. But, in the end, the governments are not satisfied.

Given that a lawsuit is now pending against Glatfelter which lawsuit alleges liability of Glatfelter in OU2-5,[2] Glatfelter is entitled to defend that suit. The governments do not assert, because they cannot, that Glatfelter is not in compliance with the UAO or that Glatfelter has expressed any intention not to comply. Glatfelter has not threatened, publicly or privately, to challenge the UAO. To be sure, if Glatfelter makes out its defense of severability and is adjudicated here as *not* liable for work in OU2-5, Glatfelter would not expect the governments to take any further enforcement action against Glatfelter for that reach of the river. Nevertheless, for purposes of this motion, the Court should decide whether the plaintiffs have in fact brought a claim for river-wide liability under section 106 of CERCLA, and if so, whether it was settled by the Consent Decree. If plaintiffs did bring the claim and it is not settled, then it should be litigated. The UAO is only relevant as evidence that the claim remains open.

Plaintiffs do correctly point out that Glatfelter's proposed answer asserts as a defense that the remedy selected for OU2-5 is arbitrary, capricious, and not in accordance with law. Glatfelter proposes to assert that defense in order to avoid a waiver, and then ***not*** to litigate it. Nevertheless, even if it were to be litigated, that defense falls squarely within the exception of section 113(h)(5), 42 U.S.C. § 9613(h)(5), because the Third Claim for Relief seeks a judgment of liability under section 106 for that portion of the river.

Even if that defense ran afoul of section 113(h) somehow, it is not grounds to deny Glatfelter's motion. It may be grounds to grant a later motion to strike a defense. It is not a reason not to litigate the governments' claim.

---

[2] Of course, if the Court were to read the Third Claim for Relief *not* to make that claim, Glatfelter's motion should be denied, and the issue of section 113(h) of CERCLA is a red herring.

### 5. Glatfelter's motion is procedurally unremarkable in the context of this matter.

The governments' brief makes assertions about the structure of CERCLA, and suggests that Glatfelter has proposed a "tortured" and "self-serving" "attack" on a conventional Superfund matter being handled routinely through administrative processes. The Court should not be misled. This case is very unconventional. To take some simple examples:

- The Consent Decree is atypical. The typical CERCLA consent decree does not allow the defendants to stop work when the money runs out, but instead requires them to complete the remedy, whatever the cost. *See* Model RD/RA Consent Decree (May 2001), ¶¶ 46-47, *available at* http://www.epa.gov/compliance/resources/policies/cleanup/superfund/mod-rdra-cd.pdf

- The other piece-mealed settlements that have been entered in this Court are similarly odd, if not unprecedented. Consent Decree, *United States v. Appleton Papers, Inc.*, No. 2:01-cv-00816-LA (E.D. Wis. Dec. 10, 2001); Consent Decree, *United States v. Fort James Operating Co.*, 2:02-cv-00602-LA (E.D. Wis. Mar. 19, 2004).

- The Site itself was proposed for inclusion on the National Priorities List as a "Superfund Site" in 1998. 63 Fed. Reg. 40,247 (July 28, 1998). Governor Thompson opposed that listing, and it never occurred. The Site remains unlisted today, even though, with an estimated cleanup cost approaching or exceeding a half-billion dollars, this Site has been studied by the National Academies of Science under Congressional direction as a nationally significant "megasite." National Research Council of the National Academies, *Sediment Dredging at Superfund Megasites* (2007), *available at* http://www.epa.gov/superfund/health/conmedia/sediment/pdfs/dredging.pdf.

- The Third Claim for Relief that is partially settled by the Consent Decree and remains partially unsettled, is asserted on behalf of both plaintiffs. Yet the law is overwhelmingly clear that a state may not sue under section 106(a) of CERCLA; only the United States may do so. *See, e.g., Colorado v. Idarado Mining*, 916 F.2d 1486, 1489, 1492-93 (10th Cir. 1990), *cert. denied*, 499 U.S. 960 (1991); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 696-97 (9th Cir. 1988); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1049 (2d Cir. 1985); 42 U.S.C. § 9606(a)("when the President determines that there may be an . . . endangerment . . . , he may require the Attorney General . . . to secure such relief as may be necessary to abate such danger or threat, and the

> district court . . . shall have jurisdiction to grant such relief as the public interest and the equities of the case may require").

- Despite an adjudication that the Menominee Tribe has no usufructuary rights anywhere near the Fox River, *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999), the United States insists that the Tribe be treated as a natural resources trustee. *See, e.g.,* Consent Decree Modification and Partial Extension, *United States v. Appleton Papers, Inc.*, No. 2:01-cv-00816-LA, ¶ F (E.D. Wis. Jan. 20, 2006).

- EPA gave special notice under section 122 of CERCLA, 42 U.S.C. § 9622, to Glatfelter and others, offering an opportunity to perform the remedial investigation and feasibility study for the Site in 1997. Contrary to conventional practice and guidance, EPA then declined the "good faith offer" to do that work on the grounds that it would be too time-consuming to supervise the private parties and funded the Wisconsin Department of Natural Resources to do the work, which was not completed until 2002.

- Contrary to all applicable guidance, EPA issued the OU2-5 UAO prior to issuing special notice, but the UAO specifically contemplates further negotiations to replace the UAO with a consent decree.

The governments suggest that Glatfelter should not be allowed to litigate plaintiffs' claim now. To do so, they say, would be "wasteful" and "drawn out." In light of the anomalous and inexplicable behavior of the plaintiffs, that charge rings hollow. They would like Glatfelter to have to await completion of work in OU2-5 to file a claim against the Hazardous Substance Response Superfund for reimbursement of any costs Glatfelter expends. *See* 42 U.S.C. § 9606(b)(2).[3] That work will take more than a decade, and may take 20 years. What the governments really intend is that Glatfelter should never have access to a court *even though plaintiffs filed a claim in this one*.[4] That cannot be a serious suggestion.

---

[3] The governments incorrectly state in their brief that that suit would be brought against "EPA." The correct party is the President as trustee for the Superfund. 42 U.S.C. § 9606(b)(2)(B); *see also Employers Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995).

[4] Recall that if the Third Claim for Relief does not assert a claim for whole-river liability, this motion should be denied and the Court will not reach this issue.

This case is not conventional. It has been percolating since 1991. By this motion, Glatfelter is asking the Court to make the resolution of this case *more* conventional. Glatfelter proposes a process with an ultimate endpoint under the typical rules for litigating cases in this Court. The Court should not think that the government is doing anything by the book, and that Glatfelter is trying to disrupt that process. There is no process. The proposed case management order would offer one.

### 6. The possibility of other claims and other parties is not relevant.

Plaintiffs deride Glatfelter's proposed case management order as "self-serving," and yet offer none of their own. Glatfelter cannot reply to an un-suggestion. However, in the interest of assisting the Court, Glatfelter offers some observations.

Plaintiffs state that they may have other claims to assert if this case goes forward. Glatfelter has no principled objection to additional claims being filed.[5] Glatfelter has, instead, suggested an orderly means of litigating issues one at a time, rather than subjecting all parties and the Court to an unwieldy, and hence inefficient, attempt to litigate all issues among all parties at once. The governments offer no reason why their additional claims ought to be litigated before the liability issue that Glatfelter proposes be first. To the extent the additional claims raise the same legal and factual questions, of course they need only be tried once.

Plaintiffs assert that other parties will wish to intervene if this case proceeds. Whether and when another party can intervene (or move to consolidate a pending case), should

---

[5] The United States asserts its right to file a natural resource damages claim. Of course, it would not be a proper plaintiff on that claim; only the natural resource trustees — for example, the Secretary of the Interior — may sue. 42 U.S.C. § 9607(f)(1), (2)(A); 40 C.F.R. § 300.600; *see also* Consent Decree ¶ D. Glatfelter would object to new *parties* joining this case at this time.

await that party's motion. At a minimum, a party seeking to intervene on the liability issue would have to show (a) that it may intervene as of right and its interests are not adequately represented by plaintiffs, Fed. R. Civ. P. 24(a)(2), or (b) that it meets the other standards for permissive intervention and its intervention will not cause undue delay or prejudice, Fed. R. Civ. P. 24(b)(3). While one cannot know what would be submitted on such a motion, the governments should be capable of litigating without assistance the proposition that Glatfelter is responsible not only for OU1, but for deposits 30 miles downstream. The governments have been making that assertion for almost a generation. EPA claims to have made findings to that effect. Surely, the United States and the State of Wisconsin are able to hold their own against a single party without help. Moreover, as plaintiffs' brief clearly shows, whenever Georgia-Pacific or NCR have something they wish to present to the Court, the United States and the State appear ready to file it as an attachment.

If there are other claims or parties that emerge, the procedural complications they present should be the subject of a future motion. The Court may always amend a case management order. Glatfelter has addressed the parties and the claims before the Court now. Its motion should be granted.

### 7. WTM I's position should not detain the Court.

WTM I wishes to act as a free-rider on Glatfelter's assertion of the severability defense. It does not wish to be required to answer, or to participate in discovery or trial.[6] The two defendants in this case are differently situated, and consequently have different emphases in

---

[6] Glatfelter supposes that WTM I would have no objection to providing testimony as if it were a third-party witness should that become appropriate.

approaching this company-threatening liability.  Glatfelter has no objection to WTM I's suggestion that it be allowed to act as a free rider in this phase of this litigation.

### 8. Conclusion.

If the Third Claim for Relief pleads a claim for liability under section 106(a) of CERCLA to abate threats presented by releases "from OU1" -- that is, downstream of OU1 -- then this motion should be granted.  The plaintiffs have characterized their Complaint in that way in the two Agreed Supplements to the Consent Decree.  The Consent Decree does not bar litigation of unsettled claims, and this claim is not settled.  Glatfelter has by this motion suggested a sensible way to proceed.

This motion has elicited a surprising response from the governments.  They have lost confidence in their assertions that Glatfelter is liable for deposits 30 miles downstream.  They do not want to litigate that issue.  If they have to litigate it, they want help from Georgia-Pacific and NCR.  If they have to litigate it, they want to involve every conceivable claim and every conceivable party all at once in a hopelessly complex lawsuit.

Glatfelter does not seek to attack the UAO.  Glatfelter does not seek to challenge the OU2-5 remedy selection at this time.  Glatfelter seeks to litigate only the claim that the plaintiffs brought: "Pursuant to Section 106(a), 42 U.S.C. § 9606(a), the Defendants are subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances into the environment . . . from OU1."  Glatfelter seeks to put plaintiffs to their proof and to assert the defense of severability or apportionment.

Glatfelter is taking care of its part of the cleanup -- the OU1 work -- at great expense and at substantial risk to its corporate survival.  The claim that Glatfelter has responsibility downstream of OU1 is simply wrong, and after seventeen years the time has come

to bring this dispute to a head. The case is pending before this Court. Glatfelter respectfully requests that a case management order be entered to allow for orderly litigation of the claim that has not been settled.

Respectfully submitted,

*/s/ David G. Mandelbaum*

David G. Mandelbaum
Harry Weiss
Marc E. Davies
Ronald M. Varnum
Jennifer E. Simon

Attorneys for Defendant P.H. Glatfelter Company

Dated: December 28, 2007

Of Counsel:

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
(215) 864-8102 (Mr. Mandelbaum direct)
(215) 864-9761 (facsimile)
mandelbaum@ballardspahr.com
weiss@ballardspahr.com
davies@ballardspahr.com
varnumr@ballardspahr.com
simonj@ballardspahr.com

# CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of December, 2007, a true and correct copy of the foregoing Reply Memorandum in Support of Motion of Defendant P.H. Glatfelter Company for a Case Management Order, with accompanying exhibits, was filed electronically via the Electronic Court Filing system and is available for viewing and downloading. In addition, a true and correct copy was served via first-class mail, postage prepaid, upon the following:

Matthew V. Richmond, Esquire
United States Department of Justice (ED-WI)
Office of the US Attorney
517 E. Wisconsin Avenue
Room 530
Milwaukee, WI 53202

Randall M. Stone, Esquire
United States Department of Justice (DC)
Environment & Natural Resources Division
P. O. Box 7611
Washington, DC 20044

Jerry L. Hancock, Esquire
Wisconsin Department of Justice
Office of the Attorney General
17 W. Main Street
P. O. Box 7857
Madison, WI 53707-7857

William H. Harbeck, Esquire
Quarles & Brady, LLP
411 E. Wisconsin Avenue
Suite 2040
Milwaukee, WI 53202-4497

Daniel C. Beckhard, Esquire
United States Department of Justice (DC)
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Jeffrey A. Spector, Esquire
United States Department of Justice (DC)
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Thomas L. Sansonetti, Esquire
United States Department of Justice (DC)
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

                                              David G. Mandelbaum
                                              Harry Weiss
                                              Marc E. Davies
                                              Ronald M. Varnum
                                              Jennifer E. Simon
                                              BALLARD SPAHR ANDREWS &
                                              INGERSOLL, LLP
                                              A Pennsylvania Limited Liability Partnership
                                              1735 Market Street, 51st Floor
                                              Philadelphia, Pennsylvania 19103
                                              Tel. 215-665-8500

                                              Attorneys for Defendant,
                                              P.H. Glatfelter Company