# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
**and the STATE OF WISCONSIN,**
                                   **Plaintiffs,**

                   **v.**                                                 **Case No. 03-C-949**

**P.H. GLATFELTER COMPANY**
**and WTM I COMPANY,**
                                   **Defendants.**

---

## DECISION AND ORDER

In 2003, the United States and the State of Wisconsin brought this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), against P.H. Glatfelter Company ("Glatfelter") and WTM I Company ("WTM"). In 2004, at the parties' request, I approved a consent decree and closed the case. In November 2007, Glatfelter filed an unexpected motion for a case management order, asserting that this is still a live case. Glatfelter argues that plaintiffs' complaint contains legal claims not resolved by the consent degree and asks for an opportunity to defend against such claims. Plaintiffs contend that Glatfelter has misread its complaint and that the consent degree resolved the action. WTM has not reappeared or weighed in on Glatfelter's motion.

## I.  BACKGROUND

On October 1, 2003, plaintiffs filed this action, alleging that defendants owned paper mills along Wisconsin's Fox River Valley that contaminated the Fox River. Governmental authorities had divided the contaminated portion of the river into five sections, called

operable units, with operable unit ("OU") 1 being farthest upstream and OU5 being farthest downstream. Plaintiffs' complaint only referred to OU1. In March 2004, plaintiff moved for entry of a consent decree, signed by all of the parties to the litigation, that would govern remedial efforts in OU1. The decree, labeled a final judgment, reserved plaintiffs' right to take further action against defendants regarding "operable units . . . other than OU1." On April 12, 2004, I approved the decree and it remains in effect.

In 2007, the federal government issued an administrative order directing Glatfelter to take remedial action in OU2 through OU5. Glatfelter argues that this order was improper because the federal government already challenged Glatfelter regarding OU2 through OU5 in the present case. Glatfelter acknowledges that the 2004 consent decree did not resolve any liability regarding OU2 through OU5, but argues that this means that the consent decree did not resolve plaintiffs' entire case and that the case remains open. Thus, Glatfelter argues that if the federal government wants to seek remedial assistance from Glatfelter in OU2 through OU5, it must do so in the present forum.

## II. DISCUSSION

Defendants are beating a dead horse. Plaintiffs' complaint refers only to cleanup activities at OU1. Glatfelter points to a single line of plaintiffs' complaint in support of its argument that the complaint alleged liability beyond OU1. In discussing injunctive relief, the complaint refers to hazardous waste released "at and from" OU1. Glatfelter asserts that, by inserting the preposition "from," plaintiffs intended this case to cover cleanup efforts at OU2 through OU5 to the extent that the waste in such units flowed downstream from OU1. However, when placed in context, the use of "from" is not so meaningful. The complaint refers to plaintiffs' request for injunctive relief three times. First, it notes that

2

plaintiffs sought "injunctive relief requiring that the Defendants take action to abate conditions at OU1 that may present an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from OU1." (Compl. at ¶ 1.) It then states that defendants are "subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances into the environment at and from OU1." (Compl. at ¶ 20.) Finally, it asks the court to "[o]rder the above-named Defendants to abate the conditions at OU1 that may present an imminent and substantial endangerment to the public health or welfare or the environment." (Compl. at Prayer for Relief ¶ 3.) The reference to the release of substances "from" OU1 simply provides context for the request for relief "at" OU1. In other words, the complaint indicates that plaintiffs wanted defendants to remedy OU1 in order to protect the river at OU1 and downstream from OU1.

If there was any ambiguity in plaintiffs' complaint, the consent decree and the parties' post-decree behavior would clear it up. The decree, signed by all parties, describes plaintiffs' complaint as seeking:

> (i) reimbursement of certain costs incurred by the United States and the State for response actions at the Lower Fox River and Green Bay Site (the "Site," as defined below) in Northeastern Wisconsin, together with accrued interest; and (ii) performance of response work by the defendants at Operable Unite 1 ("OU1," as defined below) of the Site consistent with the National contingency Plan.

(Proposed Consent Decree at 1.) The motion to enter the consent decree stated that it would "conclude this case," and neither Glatfelter nor any other party contested this assertion. The decree itself indicated that it settled the case and it was labeled as a final

3

judgment. After I approved the consent decree, I closed the case. Neither Glatfelter nor any other party protested this action or – prior to the present motion – asked for a scheduling conference at which to discuss any "remaining" issues.

As such, it is clear that the consent decree resolved this entire case. I still have jurisdiction over the case, but only for the purpose of modifying or enforcing the consent degree. If Glatfelter wants to challenge the EPA's administrative order regarding the other operable units, it will have to do so in another forum and according to the applicable statute.

## III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant Glatfelter's motion for a case management order is **DENIED**.

Dated at Milwaukee, Wisconsin, this 13 day of February, 2008.

/s_____
LYNN ADELMAN
District Judge

4